UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
EDDY PHILIPPEAUX,

                Plaintiff,

                                          **MEMORANDUM AND ORDER**

      - against -                    10 Civ. 6143 (NRB)

THE UNITED STATES OF AMERICA,

                Defendant.
---------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Eddy Philippeaux, appearing pro se, brings this action against the United States of America, asserting claims for, inter alia, misrepresentation and deceit, violation of his constitutional right to due process, retaliation and spoliation, medical malpractice, infliction of emotional distress and violation of the Privacy Act, 5 U.S.C. § 552(a). The genesis of this action was the May 25, 2010 decision of the Department of Veterans Affairs ("VA") to reject plaintiff's claim for veteran's benefits.

    Pending before the Court is defendant's motion to dismiss plaintiff's second amended complaint ("SAC") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, defendant asserts that the Court lacks subject matter jurisdiction over: (1) plaintiff's challenge to the denial of VA benefits; (2) plaintiff's Federal Tort Claims Act

("FTCA") claim based on misrepresentation and deceit; (3) plaintiff's due process claim; (4) plaintiff's spoliation and retaliation claims; (5) plaintiff's FTCA claim based on medical malpractice; and (6) plaintiff's FTCA claim for infliction of emotional distress. Further, defendant asserts that plaintiff's Privacy Act claim should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

For the reasons set forth below, the defendant's motion to dismiss plaintiff's SAC is granted. It should be noted that this does not prevent plaintiff from obtaining review of the denial of his claim for benefits. The Veterans' Judicial Review Act (the "VJRA") establishes a multi-tiered adjudicatory system. However, federal district courts are not part of that statutory structure. Further, for claims which may be asserted against the United States under the FTCA, plaintiff must comply with the administrative exhaustion requirements of the Act.

## BACKGROUND

### A. Factual Background[1]

Plaintiff is a veteran of the United States military who served honorably in the Navy from September 27, 1972 to October 1, 1980, and in the Air Force from April 20, 1984 to May 30, 1985. See SAC, Rating Decision, Ex. E. On December 21, 2009,

---

[1] The following facts, which we assume to be true for purposes of this motion, are drawn from the SAC and exhibits attached thereto. For ease of reference, citations to the SAC are to page number rather than paragraph number.

plaintiff filed a claim for benefits with the VA. Id. at 1. Plaintiff claimed that he suffered a traumatic brain injury ("TBI") while on active duty in the U.S. Navy in 1977. See SAC at 3. In response to his claim, "a compensation and pension examination ("C&P Exam") was requested." Id. at 4.

On February 26, 2010, Dr. Erin Johnson, a resident physician at the VA, noted that plaintiff had "brought records from his military service . . . which detailed a head injury in 1977," which had been caused by plaintiff's walking into a wall. Ex. H 75.[2] Dr. Johnson conducted a TBI screen and referred plaintiff for further TBI and neuropsychological testing. Id. On March 12, 2010, before this additional testing had taken place, plaintiff arrived at Dr. Johnson's clinic without an appointment and "[r]equested a letter describing that his possible TBI was related to his head injury sustained in the military; stated he needed this letter right away since they were expediting his case." Id. at 73. Dr. Johnson provided a letter stating that plaintiff "reported a history of a trauma to his head which he sustained in the military; he has showed this writer records indicating that he did sustain a head injury during his service time." Id.

---

[2] All citations to exhibits herein refer to the exhibits to plaintiff's opposition to the motion to dismiss.

On March 17, 2010, as requested by Dr. Johnson, plaintiff first met with Dr. Anna Nedelisky for a neuropsychology consultation. Id. at 72. At their second meeting on March 22, 2010, Dr. Nedelisky noted plaintiff's "expectations for federal compensation for past head injury in the thousands of dollars, and a guarantee of a federal job with no competition." Id. at 71. On April 8, 2010, plaintiff received Dr. Nedelisky's recommendations, which included, among other things, continued psychiatric treatment and medication, occupational therapy, group activity, and better sleep hygiene. Id. at 64-65. On April 14, 2010, Dr. Nedelisky filed her full Neuropsychology Report. Id. at 56-65. She concluded that plaintiff's "current cognitive difficulties are not related to the incident of running into a sharp section of wall in the 1970s." Id. at 63.

On March 15, 2010, Dr. E. Hiesiger examined plaintiff in order to prepare the C&P Exam report used to evaluate plaintiff's claim for benefits. Plaintiff was able to retrieve an unsigned copy of Dr. Hiesiger's report dated March 19, 2010. See Exh. L. The report notes that plaintiff's medical records, namely the C-file, were "not available" for review. Id. at 1. Under the heading "Diagnosis," the document says "organic mental syndrome secondary to TBI." Id. at 4. Under the heading "Diagnostic and Clinical Tests," the document says "N/A." Id. For "psychiatric manifestations" it states "N/A," and it lists

4

nothing after the heading "assessment of cognitive impairment and other residuals of TBI not otherwise classified." Id. at 3.

In his opposition to the motion to dismiss, plaintiff also includes a second C&P Exam report by Dr. Hiesiger dated May 7, 2010, which plaintiff alleges was prepared on April 15, 2010. See Ex. O. This report includes the information omitted or listed as unavailable in the March 2010 C&P Exam report. It notes "C-file reviewed" and "no neurological complaints in the C file," and it quotes the records from plaintiff's 1977 accident. Id. at 1. For "psychiatric manifestations" and "assessment of cognitive impairmet [sic] and other residuals of TBI not otherwise classified" it refers to an "attached neuropsych evaluation." Id. at 3. Under the heading "Diagnostic and Clinical Tests," the document includes a CT image report and Dr. Nedelisky's final report. Id. at 4-18. The diagnosis in this document states: "No diagnosis of traumatic brain injury[.] Based on the documentation in the C file, the incident on 10/12/1977 does not meet the criteria for TBI. There is no documentation of any symptoms indicative of a traumatic brain injury." Id. at 6.

On May 25, 2010, the VA determined that the TBI for which plaintiff sought compensation "neither occurred in nor was caused by service." Ex. Q at 4. In making its determination, the VA reviewed and considered, among other evidence: plaintiff's

treatment records from his periods of military service; the findings from a CT scan administered by the VA on March 12, 2010; the TBI preliminary examination findings of Dr. Hiesiger dated March 15, 2010; the neuropsychiatric examination findings of Dr. Nedelisky, dated April 14, 2010; and the final New York VA examination report signed and released by Dr. Hiesiger on April 15, 2010. Id. at 2-3. In its decision, the VA stated that "[a]ny discrepancies found between examinations dated March 15, 2010 may be attributed to the fact that any examination findings printed prior to April 15, 2010 are not a final report." Id. at 3-4.

### B. Allegations in the SAC

On August 17, 2010, plaintiff initiated this lawsuit against the United States of America and various other defendants. On December 6, 2010, plaintiff filed the SAC, which named the United States of America as the only defendant.

The SAC requests that the Court review various decisions of the VA related to plaintiff's health, medical records, and the decision to deny plaintiff's December 2009 claim for benefits. It alleges that Dr. Hiesiger's March TBI examination report diagnosed plaintiff with a TBI, that Dr. Nedelisky falsified her report to conclude that plaintiff had not suffered a TBI, and that Dr. Hiesiger's reliance on Dr. Nedelisky's report wrongfully prevented plaintiff from receiving VA compensation.

According to plaintiff, VA personnel constructed a falsified medical record in order to sabotage plaintiff's claim for compensation in retaliation for an earlier complaint he filed against the VA for compromising the security of his service records.

Plaintiff also alleges that Dr. Nedelisky and Dr. Hiesiger committed medical malpractice "in providing conflicting and opposite diagnosis." "In the absence of the wrongful acts by the doctors and other VA employees, plaintiff's homelessness would have stopped, his general mental and physical health status would have stabilized and not getting worse, in fact, one could say that he would have been back on track to potential recovery." SAC at 9. Plaintiff claims to have sustained emotional distress because the "illegal document (Compensation & Pension Examination Report dated April 15th, 2010) . . . was in fact used by the Veteran Rating Service Representatives as the sole basis to deny plaintiff's trauma brain injury claim in a rating decision dated June [sic] 25th, 2010." Id. at 10.

Furthermore, plaintiff alleges that Dr. Heisiger and Dr. Nedelisky, as well as other government employees, "acting under color of law, deprived plaintiff of rights secured by the United States Constitution or Federal Statutes when they did in fact knowingly used [sic] an illegal C&P Medical Examination Report

dated April 15th, 2010 to adjudicate plaintiff's claims." <u>Id.</u> at 57-58.

Finally, plaintiff alleges that VA personnel compromised the security of his service records by leaving the records in an unsecured, public area. He further alleges that visitors to the hospital and other member of the public could have accessed, viewed, or removed records necessary to his Title 38 claims. <u>See</u> SAC at 30-31.

As noted earlier, defendant filed a motion to dismiss plaintiff's SAC in its entirety for lack of subject matter jurisdiction and in some respects, for failure to state a claim.

**DISCUSSION**

**I. Legal Standards**

    **A. Rule 12(b)(1)**

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) must be granted when the district court lacks the statutory or constitutional power to adjudicate the claim. <u>See</u> <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000). Moreover, when subject matter jurisdiction is challenged, the plaintiff bears the burden of establishing that the court has jurisdiction. <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992).

**B. Rule 12(b)(6)**

When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). A complaint must include "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Where a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id. This pleading standard applies in "all civil actions." Aschroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). Mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (internal quotation marks omitted).

In evaluating a 12(b)(6) motion, the Court may only consider the "facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

Where, as here, a complaint is filed by a pro se plaintiff, the complaint should be reviewed under a more lenient standard

than that applied to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). In other words, courts must interpret such pleadings "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Nevertheless, pro se plaintiffs remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in Twombly and Iqbal. See Schwamborn v. County of Nassau, 348 F. App'x 634, 635 (2d Cir. 2009).

## II. Plaintiff's Claims

As noted earlier, the SAC includes various allegations of intentional and negligent acts by the VA and its personnel. Additionally, in his opposition to the motion to dismiss, plaintiff asserts new claims and pleads supplementary facts. While a brief is not the appropriate mechanism to amend a complaint, given plaintiff's pro se status, we review the SAC and plaintiff's opposition to the motion to dismiss liberally and address all of his allegations. Thus, we construe plaintiff's submissions as asserting causes of action for: (1) review of the VA's decision denying his claim; (2) misrepresentation and deceit; (3) violation of his due process rights; (4) spoliation; (5) retaliation; (6) medical malpractice; (7) violation of the Privacy Act; and (8) negligent

and/or intentional infliction of emotional distress. We address each of these claims in turn.

### A. Judicial Review of the VA's Decision

#### 1. Review of the Claim Denial

To the extent that plaintiff is seeking review of the VA's decision, the law does not permit this Court to hear his claim. Congress has enacted the VJRA, which provides for an exclusive multi-tiered review of veterans' benefits claims. Specifically, the VJRA provides that determinations of the regional offices of the VA may be appealed to the Board of Veterans' Appeals ("BVA"), whose decisions are then reviewable exclusively by the United States Court of Veterans Appeals, an Article I court established by the VJRA. See 38 U.S.C. §§ 7104, 7251, 7252(a). Decisions of the Court of Veterans Appeals are in turn appealable to the United States Court of Appeals for the Federal Circuit. Id. §§ 7292(a), (c). The judgment of the Federal Circuit Court of Appeals is then subject to review in the United States Supreme Court by writ of certiorari. Id. § 7292 (c).

Most significantly for our purposes, the review structure for disputes involving veterans' benefits excludes federal district courts. As described by the Second Circuit, "the VJRA provides, for the first time, judicial review of veterans' benefits determinations in the Federal Circuit; at the same time it broadens [the act's] preclusion of judicial review by other

courts." Larrabee v. Derwinski, 968 F.2d 1497, 1501 (2d Cir. 1992).

Specifically, Section 511(a) of Title 38 provides that except for the review system just described, decisions by the Secretary of the VA on "all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans . . . shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise." In other words, the VJRA "precludes [direct] judicial review in Article III courts of VA decisions affecting the provision of veterans' benefits," and "[t]he exclusive avenue for redress of veterans' benefits determinations is appeal to the Court of Veterans Appeals and from there to the United States Court of Appeals for the Federal Circuit." Price v. United States, 228 F.3d 420, 421 (D.C. Cir. 2000). When a veteran's "underlying . . . claim is an allegation that the VA unjustifiably denied him a veterans' benefit," "[t]he district court lack[s] jurisdiction." Id.[3]

---

[3] Other cases have similarly found that the statute precludes subject matter jurisdiction. See, e.g., Hasson v. U.S. Dep't of Veterans Affairs, 137 F. App'x 418, 420 (2d Cir. 2005)(complaint that plaintiff was expelled from a VA hospital properly dismissed for lack of subject matter jurisdiction); Thompson v. Veterans Admin., 20 F. App'x 367, 368-69 (6th Cir. 2001) (action properly dismissed for lack of subject matter jurisdiction where veteran whose claim for disability benefits was denied alleged that the VA filed false and fraudulent military records pertaining to him).

Thus, to the extent that plaintiff asks us to review the VA's denial of his claim for benefits, this Court lacks jurisdiction to do so.

### 2. Misrepresentation and Deceit

Next, plaintiff alleges that VA personnel misrepresented his condition and falsified a medical report. Construed liberally, these allegations are an effort to plead a claim for misrepresentation and deceit under the FTCA. Plaintiff's misrepresentation and deceit claim fails for two reasons.

First, plaintiff has failed to show that he exhausted his administrative remedies with regard to this claim. Specifically, plaintiff has not alleged that he filed a written administrative claim with the appropriate federal agency within two years of the alleged injury as required by 28 U.S.C. §§ 2401(b), 2675(a).

Second, even if plaintiff had exhausted all administrative remedies, the FTCA is only a limited waiver of the sovereign immunity of the United States. See United States v. Mitchell, 445 U.S. 533, 539 (1980); Millares v. United States, 137 F.3d 715, 719 (2d Cir. 1998). That limited waiver does not extend to claims against the United States "arising out of . . . misrepresentation [or] deceit," which are explicitly excepted from the scope of the FTCA. 28 U.S.C. § 2680(h). This exception precludes claims for negligent and intentional misrepresentation. See Dorking Genetics v. United States, 76

F.3d 1261, 1264 (2d Cir. 1996); see also Lipkin v. S.E.C., 468 F. Supp. 2d 614, 624 (S.D.N.Y. 2006)("To the extent plaintiffs make claims of 'concealment' and spoliation of evidence . . . these claims cannot be viewed as sounding in tort (in which case there is no waiver of sovereign immunity for the claims) or they fall within the 'misrepresentation' or 'deceit' exceptions to the FTCA."). Thus, this Court lacks subject matter jurisdiction to hear these claims as well.

### 3. Constitutional Claims

Next, plaintiff alleges that he was deprived of due process when VA personnel used a falsified report to deny his claim for benefits. Again, this Court lacks subject matter jurisdiction.

First, courts have consistently held that a federal district court does not acquire jurisdiction to hear challenges to veterans benefits determinations merely because, as here, those challenges are cloaked in constitutional terms. See Pappanikoloaou v. Adm'r of Veterans Admin., 762 F.2d 8, 9 (2d Cir. 1985) (per curiam) ("[O]ne may not circumvent § [5]11(a) by seeking damages on a constitutional claim arising out of a denial of benefits.").

Second, the United States has not waived its sovereign immunity with respect to constitutional claims seeking money damages that are brought directly against the United States. See

Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).

As a result, this Court lacks subject matter jurisdiction over plaintiff's constitutional claims.

### 4. Retaliation Claim

Plaintiff also alleges that his March 15, 2010 C&P Exam report was replaced with the April 14, 2010 report in retaliation for his complaints against the VA for compromising the security of his military records. To the extent the SAC purports to allege a First Amendment retaliation claim pursuant to Bivens v. Six Unknown Agents of the Fed. Narcotics Bureau, 403 U.S. 388 (1971), the cause of action is dismissed for two principal reasons.

First, while the Supreme Court held in Bivens that federal employees or officers acting under the color of their authority may be held personally liable for violations of a person's constitutional rights, actions seeking money damages cannot be brought against the United States, since, as discussed above, the United States has not waived sovereign immunity for such constitutional claims. See Robinson, 21 F.3d at 510.

Second, plaintiff may not successfully recast his claim by naming individual VA employees as defendants. This is the teaching of Hicks v. Veterans Admin., 961 F.2d 1367, 1368 (8th Cir. 1992). In Hicks, a veteran sued the VA alleging that his

disability benefits were reduced in retaliation for the exercise of his First Amendment rights. Hicks alleged that a doctor at the hospital where he was a patient wrote a letter that led to a reevaluation of his disability rating which in turn reduced the level of benefits he was receiving. Id. at 1368. The Eighth Circuit found that Hicks's claim was "essentially a challenge to the reduction of benefits on a constitutional basis," which "[a]s a challenge to a decision affecting benefits, [was] encompassed by 38 U.S.C. § 511." Id. at 1370.

In this case, plaintiff's benefits were denied and, as in Hicks, his claim falls within the purview of Section 511, which does not permit this Court to hear this claim. As noted in the preceding discussion, plaintiff cannot overcome the jurisdictional bar of Section 511 by reframing his claim in constitutional terms. The statute encompasses all claims, whatever their basis, as long as they are "necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a).

Thus, plaintiff must seek relief only through the adjudicatory system established by the VJRA.

### B. Medical Malpractice Claim

Under the FTCA, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private

individual under like circumstance . . . ." 28 U.S.C. § 2674. Under New York law, "[t]he essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury." Roca v. Perel, 859 N.Y.S.2d 203, 206 (2d Dep't 2008) (internal quotation marks omitted). Moreover, a plaintiff must allege the existence of a physician-patient relationship. See Savarese v. Allstate Ins. Co., 731 N.Y.S.2d 226, 227 (2d Dep't 2001).

Here, plaintiff claims that Dr. Hiesiger's reliance on Dr. Nedelisky's report, which plaintiff asserts was falsified, was the basis for the VA's denial of his benefits claim and the proximate cause of his injuries. However, regardless of how this claim is viewed in legal terms, this Court does not have subject matter jurisdiction to hear this cause for two principal reasons.

First, properly understood, the "medical malpractice claim" is no more than a restated claim to review the VA's benefits denial. As noted earlier, claims concerning veterans' benefits are governed by the VJRA, which creates an exclusive review procedure, excluding federal district courts, for the resolution of veterans' disputes.

Second, viewed more narrowly, this claim is excluded from the waiver of sovereign immunity of the FTCA as the Act

explicitly does not apply to "[a]ny claim arising out of . . . misrepresentation." 28 U.S.C. § 2680(h). "In determining the applicability of the § 2680(h) exception, a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts." Lambertson v. United States, 528 F.2d 441, 443 (2d Cir.), cert. denied, 426 U.S. 921 (1976). Thus, the FTCA expressly precludes the Court from reviewing claims arising out of negligent or intentional misrepresentation. See Dorking Genetics, 76 F.3d at 1264.

Moreover, even if we had jurisdiction over plaintiff's claim, plaintiff has not plead the essential elements of medical malpractice. First, plaintiff's claim of misdiagnosis (to the extent that it may be viewed as distinct from his benefits denial claim) is that he received conflicting diagnoses based solely on an unsigned and unapproved draft C&P Exam report that plaintiff obtained prior to its completion. The draft was prepared by a non-treating physician before plaintiff's C-file or any diagnostic or clinical tests were available for review. Indeed, plaintiff received a final diagnosis -- namely, Dr. Nedelisky's report identifying her impression of psychosis, depression, and anxiety. Significantly, no treating physician ever diagnosed plaintiff with a TBI. Rather, it appears that it was the plaintiff who first suggested that he had suffered a TBI

18

when he brought records to Dr. Johnson showing that he had "hit head against wall . . . while walking" and received a one-centimeter laceration requiring two stitches. Ex. I; see also Ex. H at 74. Dr. Johnson did not diagnose plaintiff with a TBI, but rather referred him to Dr. Nedelisky for further neuropsychological testing. Ex. H at 75.[4]

Second, plaintiff does not plead any facts showing that he was injured by any medical services rendered by Dr. Nedelisky, but only states that her alleged misdiagnosis was wrongfully relied on by the VJRA. Thus, whether plaintiff had suffered a TBI while in active duty in 1977 matters only insofar as it affects plaintiff's ability to receive VA compensation.

Third, plaintiff never alleges that Dr. Hiesiger was a treating physician or played any role besides examining plaintiff solely for the purpose of determining his eligibility for VA benefits. His allegations are insufficient to support the existence of the physician-patient relationship that is a prerequisite to a medical malpractice claim. Id. at 227 (holding that "[a] physician-patient relationship does not exist where the examination is conducted solely for the purpose of rendering an evaluation for an insurer"); see also Kennedy v. United

---

[4] Plaintiff's unsubstantiated disagreement with the diagnosis of the VA is an insufficient basis to sustain his claim of malpractice. Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Naked assertions do not suffice to state a claim for relief. See id. at 557; Iqbal, 129 S. Ct. at 1949.

States, No. 91-30204-F, 1993 WL 666704, at *5 (D. Mass. Dec. 15, 1993) (concluding that a doctor who "examined plaintiff solely for the purpose of determining his eligibility for VA benefits . . . owed plaintiff a duty *only* not to cause plaintiff harm during his examination").

Finally, plaintiff's theoretical concerns that he may receive inadequate medical care in the future if his medical records contain a misdiagnosis is not a ripe matter for litigation. Although Dr. Nedelisky concluded that plaintiff's symptoms were not caused by a TBI, she identified her impression of psychosis and depression, and she recommended treatment that plaintiff is eligible to receive.

Accordingly, plaintiff's claim for medical malpractice is dismissed for lack of subject matter jurisdiction and/or failure to state a claim.

### C. Privacy Act Claim

Plaintiff alleges that VA personnel compromised the security of his military records. To the extent the SAC purports to allege a violation of the Privacy Act, 5 U.S.C § 552a, this cause of action is dismissed for failure to state a claim.

To state a claim under the Privacy Act, a plaintiff must show that: "(1) the information at issue is a record contained within a system of records; (2) the agency violated the Act with respect to that record; (3) the disclosure had an adverse effect

20

on the plaintiff; and (4) the violation was willful or intentional." Int'l Union, Sec., Police, & Fire Prof'ls v. U.S. Marshal's Serv., 350 F. Supp. 2d 522, 528 (S.D.N.Y. 2004) (citing Quinn v. Stone, 978 F.2d 126, 131 (3d Cir. 1992)); see also Mandel v. U.S. Office of Pers. Mgmt., 244 F. Supp. 2d 146, 150 (E.D.N.Y. 2003); Germosen v. Cox, No. 98 Civ. 1294, 1999 WL 1021559, at *18 (S.D.N.Y. Nov. 9, 1999).

Additionally, under the Privacy Act, an individual may only "bring a civil action against the agency." 5 U.S.C. § 552a(g)(1). Here, however, plaintiff only names the United States as a defendant, and not an agency. However, the Privacy Act's definition of "agency" does not include the United States. 5 U.S.C. § 552(f)(1).

However, even if plaintiff had properly named the VA as defendant, he fails to meet the adverse effect prong. Plaintiff asserts that VA staff left "unsecured [Plaintiff's] sole and only original medical military service records with apparent free access to the public and all visitors of the hospital and that office for several weeks." SAC at 30. Yet, plaintiff does not "know[] with absolute certainty whether or not any pertinent records have been removed." Id. As a result, his assertions are insufficient to support a plausible claim under the Privacy Act because he fails to adequately show that he was adversely affected by any disclosure.

To the extent plaintiff claims that "there is a good possibility that [he] may no longer be able to prove any or all of [his] service connected disabilities," id. at 31, his Privacy Act claim is another version of his effort to review the VA's denial of benefits over which we have no jurisdiction.

Accordingly, the Privacy Act cause of action is dismissed for failure to state a claim.

### D. Intentional or Negligent Infliction of Emotional Distress

Finally, plaintiff also seeks damages for intentional or negligent infliction of emotional distress ("IIED" and "NIED"). As noted earlier, the United States may only be held liable under the FTCA if a private individual would be subject to liability pursuant to the laws of the jurisdiction. See Castro v. United States, 34 F.3d 106, 111 (2d Cir. 1994).

Plaintiff alleges that defendants' conduct caused him "mental, emotional injury as well as . . . physical pain and suffering and . . . deterioration of health due to deprivation [of benefits] and mental anguish and continued homelessness." SAC at 40. Specifically, plaintiff alleges that the wrongful actions of the defendants resulted in "plaintiff suffering aggravated mental . . . and physical pain and prolong[ed] homelessness due to the sabotage of benefit claim which was

denied based on the falsified medical report and plaintiff's mental anguish has worsen considerably." SAC at 7.

Plaintiff's IIED and NIED must be dismissed for four reasons. First, evaluation of these claims would necessitate a consideration of the decision to deny his benefits, a review specifically precluded by Section 511(a) of the VJRA. The Ninth Circuit decision Hicks v. Small, 69 F.3d 967 (9th Cir. 1995), is on point. The Ninth Circuit upheld the dismissal for lack of subject matter jurisdiction of claims of IIED purportedly arising from a decision by the VA to reduce benefits. Id. at 970. The same analysis holds sway here.

Second, the Court lacks jurisdiction over plaintiff's NIED claim because plaintiff has not exhausted his administrative remedies with respect to this claim. Under the FTCA, an action "shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). Plaintiff has made no such claim.

Third, under the FTCA, plaintiff cannot avoid the exemptions in 28 U.S.C. § 2690(h) merely by recasting his claim under another name. See Sabow v. United States, 93 F.3d 1445, 1456 (9th Cir. 1996). Even if plaintiff suffered mental distress as a result of the VA doctors' allegedly false diagnosis, the proposed emotional harm claims arise out of the

misrepresentation and deceit and, accordingly, are barred by Section 2690(h). See Thomas-Lazear v. F.B.I., 851 F.2d 1202, 1206-07 (9th Cir. 1988). The Court therefore lacks jurisdiction over plaintiff's emotional distress claims as they are "nothing more than an effort to remove the damage element from an intentional tort barred by Section 2680(h) and plead it separately as negligent infliction of emotional distress." Id. at 1206.

Fourth, even if plaintiff could overcome the many jurisdictional hurdles just discussed, we would nonetheless find that the allegations do not state a claim under New York law. A claim for IIED requires the defendant's activities to be extreme and outrageous, such that they exceed the bounds of decency, see Howell v. N.Y. Post Co., 81 N.Y.2d 115, 122 (1993), while NIED "depend[s] on a plaintiff's proximity to and observation of serious physical injury or death inflicted on a member of the plaintiff's immediate family or the endangerment of a plaintiff's physical safety," Dollman v. Mast Indus., 731 F. Supp. 2d 328, 340 (S.D.N.Y. 2010) (internal quotation marks and alterations omitted). None of these requirements are satisfied here.

Accordingly, plaintiff's claims for intentional and negligent infliction of emotional distress are dismissed.

24

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted and the complaint is dismissed in its entirety.


Dated:   New York, New York
         September 27, 2011

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE


Copies of the foregoing Order have been mailed on this date to
the following:

**BY MAIL**

Eddy Philippeaux, pro se
244 Madison Avenue, # 176
New York, NY 10016


Carina H. Schoenberger
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, NY 10007